IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WALKER, #R02343, | |
| Plaintiff, | Case No. 22-cv-00632-SPM |
| v. | |
| SAWYER, DUNLAP, HOWARD, MCQUEEN, BAKER, HENSON, FIERS, NIEKIRK, RIGGS, SHAH, JOHN DOE 1, JOHN DOE 2, JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JANE DOE 8, JANE DOE 9, JANE DOE 10, JANE DOE 11, JANE DOE 12, JANE DOE 13, JANE DOE 14, JANE DOE 15, JANE DOE 16, and PURDUE, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff James Walker, an inmate of the Illinois Department of Corrections who is currently incarcerated at Sheridan Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Lawrence Correctional Center ("Lawrence"). The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges he suffers from sinusitis, gastrointestinal problems, and back pain caused by arthritis. (Doc. 1, p. 17). At various times at Lawrence, Plaintiff was denied adequate medical care to treat these conditions.

*Cold/Sinusitis*

In late November 2019, Jane Doe 1 told Plaintiff that all his medications for his allergies would be reissued. (Doc. 1, p. 17). Plaintiff was not given any pain or allergy medications during this visit because Jane Doe 1 said he would be receiving the medication in a few days, but he did not. In December, Plaintiff made a request to be seen during sick call for cold symptoms. He was seen in the healthcare unit by Jane Doe 2. Plaintiff told Jane Doe 2 that he had been waiting over three weeks for his medicine. Jane Doe 2 said she would reorder the medication. As of January 2020, Plaintiff had not received any of the medication "related to his pain or any other health problems."

Plaintiff made repeated requests to see the doctor, and his requests were ignored. (Doc. 1, p. 17). In February 2020, he was seen by Jane Doe 3 for sinus problems. (*Id.* at p. 18). Jane Doe 3 asked Plaintiff if he had received his allergy spray and pills. He told her he had not received any pain or allergy medications. Jane Doe 3 checked on the delay and told Plaintiff he would have to wait two more days. (*Id.*).

On February 20, 2020, Plaintiff was called to the health care unit to be seen for gastrointestinal problems. (Doc. 1, p. 18). Plaintiff told Janes Doe 4 and Jane Doe 5 that he was barely able to talk because of the cold symptoms in his throat and chest. On February 27, 2020, Plaintiff was called to the health care unit for his cold symptoms. Jane Doe 6 asked Plaintiff about his symptoms, and Plaintiff told her, "they are almost gone now."

**Stomach Pains**

In June 2020, Plaintiff made repeated requests for treatment of stomach pain caused by eating cold breakfast, lunch, and dinner. (Doc. 1, p. 19). These requests were ignored by Jane Doe 7. On July 19, 2020, Plaintiff made another request for treatment of his stomach problems and an aggressive cold sore. On July 29, 2020, he submitted a medication refill request in which he also sought treatment for stomach problems. Again, both requests were ignored by Jane Doe 7. (*Id.*).

Around August 8, 2020, Plaintiff received the medication refills by Jane Doe 8, but he did not receive a response or treatment concerning his stomach pain. (Doc. 1, p. 19). Plaintiff asked Jane Doe 8 about his requests to be seen by a medical provider, he was told to submit another sick call request. Around October 21, 2020, Plaintiff again submitted a request to be seen at the health care unit for stomach pains but "to no avail." (*Id.* at p. 21).

**Injured Leg**

In June 2020, Plaintiff's back pain caused him to fall while climbing down from his bunkbed. (Doc. 1, p. 23). Because of the fall Plaintiff injured his right leg. He sought medical care

Page 3 of 14

by submitting a sick call request. The request was ignored by Jane Doe 16. Five days later, Plaintiff fell again. He submitted another sick call request that was ignored by Jane Doe 16. Plaintiff informed his wing officer, Purdue, that he needed medical treatment, and again, his request was ignored. (*Id.*).

*Back Pain*

In October 2020, Plaintiff requested treatment for his back pain and notified the health care unit that he had not received Ibuprofen for his pain in over two months. (Doc. 1, p. 21). While being seen by Jane Doe 10, in November, Jane Doe 10 informed Plaintiff that the Ibuprofen prescription had previously been discontinued by Dr. Shah in August. No reason was given in the medical records for why Dr. Shah terminated the prescription. Jane Doe 10 stated she would check on Plaintiff receiving pain medication but "to no avail." (*Id.* at p. 22).

At another appointment with Jane Doe 11, she also told Plaintiff she would check on him receiving pain medication. (Doc. 1, p. 22).

*Notification of Call Passes*

Plaintiff asserts that he was not notified of health care call passes by staff in retaliation for filing grievances. (Doc. 1, p. 20). Plaintiff was called to the healthcare unit in September 2020. (*Id.* at p. 19). Jane Doe 9 informed Plaintiff that he had a call pass for an x-ray to be taken August 28, but it was recorded that Plaintiff refused the call pass and missed his appointment. (*Id.* at p. 19-20). Plaintiff denies that he was informed of the call pass. He asserts he did not refuse a health care call pass, and he did not sign anything relating to an August 28 call pass. (*Id.* at p. 20). Plaintiff states that Correctional Officer Sawyer did not inform him of the health care call pass the day before the appointment, and Correctional Officer Dunlap did not notify him of his call pass on the day of the appointment, August 28. (*Id.*).

On September 28, 2020, Plaintiff's cell door was opened. (Doc. 1, p. 20). When he went to

the "pod" to ask the officers why the cell door was opened, they told him he had a health care call pass. In October, Dunlap did not tell Plaintiff that a call pass for the health care unit was cancelled, even after Plaintiff had asked Dunlap about the status of his call pass.

*Medical Permits*

Plaintiff had been issued a medical permit to wash his laundry daily due to gastrointestinal problems. (Doc. 1, p. 22). At various times, Defendants prevented Plaintiff from "timely usage of said permit." (*Id.*). In October and November 2020, because of improper monitoring of the laundry room, Plaintiff's laundry was thrown to the side and not washed. This occurred during the shift of Correctional Officers Baker, Dunlap, and Henson in October, and during the shift of Correctional Officers Sawyer, Fiers, Niekirk, and Riggs in November. (*Id.*).

Plaintiff also has a medical permit to receive one toilet paper roll per week. (Doc. 1, p. 22). This medical permit was not timely honored by officers and medical staff. Specifically, Plaintiff made repeated requests for toilet paper from June through August 2021, and the requests were ignored by the health care unit. In July 2021, he informed Jane Doe 13 that he had not been receiving toilet paper and was having to go three to four days without toilet paper. (*Id.* at p. 23). Jane Doe 13 stated that toilet paper is issued on Sundays by Jane Doe 14. He asked about the toilet paper in requests for medication refills sent in June and July 2021. Plaintiff received his medication, but his requests for toilet paper were ignored by Jane Doe 15.

PRELIMINARY DISMISSALS

In the Complaint, Plaintiff mentions an individual named Taylor, but Taylor is not listed as a defendant or included in the case caption. (Doc. 1, p. 23). Because Taylor is not identified as a defendant, any potential claims against this person are dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (title of complaint "must name all the parties"); *Myles v. United States,* 416 F.3d 551, 51-52 (7th Cir. 2005) (to be considered a proper party, defendant must be "specif[ied] in the

caption")

The Court also dismisses Defendants Howard, McQueen, and Jane Doe 12. Although these individuals are listed in the case caption, there are no allegations against them in the statement of claim or elsewhere in the Complaint. Accordingly, these Defendants are dismissed without prejudice.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

Count 1: Eighth Amendment claim against Jane Does 1, 2, 3, 4, 5, and 6, and John Doe 1[1] for deliberate indifference to Plaintiff's cold and allergy symptoms.

Count 2: Eighth Amendment claim against Jane Does 7 and 8 for deliberate indifference to Plaintiff's stomach pains.

Count 3: Eighth Amendment claim against Jane Doe 16 and Purdue for ignoring Plaintiff's requests for medical treatment after he injured his leg.

Count 4: Eighth Amendment claim against Jane Doe 10 and 11, and Dr. Shah for deliberate indifference to Plaintiff's back pain.

Count 5: First Amendment claim against Jane Doe 9, Sawyer, and Dunlap for retaliating against Plaintiff for filing grievances by refusing to notify Plaintiff when he had medical appointments or that his appointments had been canceled.

Count 6: Eighth Amendment claim against John Doe 2, Baker, Dunlap, Henson, Sawyer, Fiers, Niekirk, and Riggs for preventing Plaintiff from using his medical permit for daily laundry.

Count 7: Eighth Amendment claim against Purdue, Jane Does 13, 14, and 15 for failing to honor Plaintiff's medical permit to receive one roll of toilet paper per week.

---

[1] In listing the Defendants, Plaintiff describes John Doe 1 as a correctional officer and John Doe 2 as a doctor. (Doc. 1, p. 4). However, in the Statement of Claim section of the Complaint, he describes John Doe 1 as a dentist and John Doe 2 as a correctional officer. (*Id.* at p. 18, 22). The Court treats John Doe 1 and 2 as described in the Statement of Claim.

Page 6 of 14

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Deliberate Indifference

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea,* 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted or failed to act with deliberate indifference to the risk of harm from that condition. *Id.; see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Medical negligence or even malpractice does not violate the Constitution. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

### Count 1

The Court finds that Plaintiff has not sufficiently stated a claim for an Eighth Amendment violation relating to his cold symptoms. First, Plaintiff has not sufficiently pled that he suffered from a serious medical need. The Seventh Circuit has held that "not every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez v. Peters,* 111 F. 3d 1364, 1372 (7th Cir. 1997). In the Complaint, Plaintiff

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

describes his condition as cold symptoms and associated pain that he experienced from November 2019 through February 2020. By February 27, 2020, he reported that his symptoms were "almost gone." (Doc. 1, p. 18). Suffering from the common cold is not a severe enough to constitute a serious condition for deliberate indifference purposes.

Further, even assuming that Plaintiff suffered from a serious medical need, he has not adequately pled that Defendants acted with deliberate indifference towards his condition. At his appointment in November 2019, Jane Doe 1 believed that his medications would be issued in a few days. In December, Jane Doe 2 asked Plaintiff about his medications and stated she would reorder them. In February 2020, Jane Doe 3 checked on the status of his medications and stated she believed he would be receiving his medicine in two days. Jane Does 4 and 5 also informed Plaintiff they would check on Plaintiff's medications. By the time Plaintiff saw Jane Doe 6, he reported to her that his symptoms had improved. He had a single interaction with each Defendant, and their conduct does not allow the Court to plausibly infer that they acted with the level criminal recklessness required for deliberate indifference. Count 1 is dismissed as to Jane Does 1, 2, 3, 4, 5, and 6.

Likewise, Plaintiff has failed to describe any conduct on the part of the dentist, John Doe 1, for deliberate indifference. Plaintiff states that during the dental appointment, John Doe 1 remarked that it seemed Plaintiff was sick. (Doc. 1, p. 18). He does not allege that John Doe 1 had any involvement in ordering or providing him with his medications, scheduling him to be seen by the appropriate medical provider, or otherwise treating his illness. The Seventh Circuit has "rejected the notion that everyone who knows about a prisoner's problems will incur § 1983 liability." *Aguilar v. Gaston-Camara,* 861 F. 3d 626, 633 (7th Cir. 2017). Accordingly, Count 1 is also dismissed as to John Doe 1.

### Count 2

Plaintiff states he suffers from ongoing gastrointestinal issues, for which he takes various medications. (Doc. 1, p. 22). He made repeated requests for treatment of his stomach pain, and these requests were ignored by Jane Doe 7. (*Id.* at p. 19). This is sufficient for Count 2 to survive as to Jane Doe 7.

Count 2 will also proceed against Jane Doe 8. Plaintiff states that when Jane Doe 8 was distributing medication, he told her that his sick call requests for his stomach pains were being ignored. She responded by telling him to put in another sick call request. These allegations state a colorable claim for deliberate indifference and Count 2 will proceed against Jane Doe 8.

### Count 3

Plaintiff claims that he injured his leg when he fell from his bunkbed on two separate occasions in June 2020, and Jane Doe 16 and Purdue ignored his requests for medical care. At this point, these allegations are too vague to state a claim. Plaintiff has not described the nature or extent of his leg injury, and it is not clear what information was relayed to the Defendants. If Defendants were not adequately put on notice of a risks of harm, ignoring a request for medical treatment would not constitute deliberate indifference. *See Caffey v. Maue,* 679 F. App'x 487, 491 (7th Cir. 2017). Accordingly, Count 3 is dismissed.

### Count 4

Plaintiff has failed to plead that Jane Does 10 and 11 and Dr. Shah acted with deliberate indifference regarding his back pain. Plaintiff asserts that during his visits with Jane Doe 10 and 11, they informed Plaintiff that his pain medication had been discontinued by Dr. Shah. They both stated they would check on the status of the medication. To the extent the Jane Does failed to check on Plaintiff's pain medication after a single complaint, this conduct may be negligent, but as described, it does not rise to the level of deliberate indifference. Similarly, the fact that Dr. Shah

discontinued his medication by itself, also does not constitute deliberate indifference. There is nothing in the Complaint from which the Court can infer that Dr. Shah knew that Plaintiff was still suffering from pain after the pain medication was discontinued, and Dr. Shah consciously disregarded the risk it posed. Count 4 is dismissed.

### Count 5

To state a claim for retaliation, a plaintiff must plead that (1) he engaged in First Amendment activity; (2) he experienced an adverse action that would likely deter First Amendment activity in the future; and (2) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Plaintiff asserts that on three occasions there were issues with his appointments and call passes to see a medical provider. For an August 28, 2020, appointment, he was never notified he had an appointment, and it was falsely recorded that he refused the call pass. (Doc. 1, p. 20). On September 28, 2020, he was let out of his cell to attend a medical appointment, but he was not given prior notice that he had a call pass that day. Finally, in October 2020, Plaintiff was given a call pass for the health care unit for an appointment scheduled the following day, but when it came time for his appointment, he was not notified that the appointment was cancelled. Plaintiff claims that these miscommunications occurred in retaliation for filing grievances. This conclusion, that the issues with his call passes was the result of retaliation is "implausibly speculative." *See Conner v. Schwenn,* 821 F. App'x 633, 636 (7th Cir. 2020). There are no facts suggesting that Defendants even knew that Plaintiff had filed grievances regarding his medical care. Therefore, Count 5 is dismissed. *See Twombly,* 550 U.S. at 555 (it is not sufficient for a plaintiff's claims to "rest on mere labels, conclusions, or a formulaic recitation of the elements of a cause of action").

## Count 6

Plaintiff claims that at unspecified times in October and November 2020, his laundry was not done pursuant to his medical permit because Correctional Officers Baker, Dunlap, Henson, Sawyer, Fiers, Niekirk, and Riggs were not properly monitoring the laundry room during their shifts. As pled, Plaintiff's allegations do not state a constitutional claim. First, a deprivation of this nature does not rise to the level of a constitutional violation. Second, "supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable" under Section 1983. *Jones v. Chicago,* 856 F. 2d 985, 992 (7th Cir. 1988). Accordingly, Count 6 is dismissed.

## Count 7

Plaintiff states that he takes "various medications to help with gastrointestinal problems" and because of these problems "he was issued a medical permit for one toilet paper each week." (Doc. 1, p. 22). He informed Jane Doe 13 that he was not receiving his extra roll of toilet paper, and she responded that Jane Doe 14 distributes the toilet paper on Sundays. He does not provide any factual details regarding his interactions with Jane Doe 14. As for Jane Doe 15, Plaintiff states that he requested toilet paper when asking for medication refills, but his request was ignored.

The existence of a medical permit does not "supplant [the] framework for Eighth Amendment claims." *Estate of Miller by Chassie v. Marberry,* 847 F. 3d 425, 428 (7th Cir. 2017). A plaintiff must still adequately plead that he had a serious medical condition, and that the defendants' conduct was deliberately indifferent to a serious risk. A staff member's "refusal to comply with an inmate medical permit does not automatically establish the subjective element of Eighth Amendment claims." *Salley v. Parker,* No. 18-cv-5700, 2022 WL 2952818, at *10. (N.D. Ill. July 26, 2022). As other courts have noted, a medical permit "might call for treatment that is beyond what is required by the Eighth Amendment." *Id.* (quoting *Everett v. Baldwin,* No. 13 C 04697, 2016 WL 8711476, at *7 n.6 (N.D. Ill. 2016)).

Here, Defendants' conduct, as described by Plaintiff, does not amount to an Eighth Amendment claim. Plaintiff has not stated any diagnosis or described his symptoms. He simply states he had gastrointestinal issues. It is also not clear how Defendants were ignoring a serious risk to his health by not properly responding to his complaint about not receiving extra toilet paper in accordance with his medical permit. Accordingly, Count 7 is dismissed without prejudice.

### IDENTIFICATION OF DOE DEFENDANTS

Plaintiff is allowed to proceed with Count 2 against Jane Does 7 and 8. These defendants must be identified with particularity, however, before service of the Complaint can be made. In that vein, Deanna Brookhart, Warden of Lawrence, will be added a party in this action, in her official capacity only, and shall be responsible for responding to discovery aimed at identifying this unknown defendant. Once Warden Brookhart is served and has entered her appearance, the Court will enter a scheduling order setting guidelines for discovery. Plaintiff will then have the opportunity to engage in limited discovery to ascertain Jane Doe's identity. *Rodriguez*, 577 F.3d at 832. Once the names of these individuals are discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 2** will proceed against Jane Doe 7 and Jane Doe 8. **COUNTS 1, 3, 4, 5, 6,** and **7** are **DISMISSED without prejudice.** Because there are no surviving claims against Defendants Purdue, Sawyer, Dunlap, Howard, McQueen, Baker, Henson, Fiers, Niekirk, Riggs, Shah, Jane Does 1-6, 9-16, and John Does 1 and 2, these Defendants are **DISMISSED without prejudice**. The Clerk is **DIRECTED** to **TERMINATE** them as parties. The Clerk **SHALL ADD** to the docket the Warden of Lawrence Correctional Center, **Deanna Brookhart**, as a defendant in

her official capacity only.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for **Brookhart** (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**Brookhart need not answer or otherwise respond to the Complaint, as she is only in this case for the purpose of identifying the Jane Doe defendants. She must only enter her appearance and will receive further instructions on discovery at a later date.**

Service shall not be made on the unknown defendants until such time as Plaintiff has identified him or her by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Jane Doe Defendants, once identified, are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Jane Doe Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 8, 2023**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.